# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-20-00196-CV
_____

## IN THE INTEREST OF F.C.

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 18-12-16340-CV**

## MEMORANDUM OPINION

Mother and Father seek to overturn the trial court's judgment terminating their parental rights to their child, *John*.[1] In separate appeals, Mother and Father argue the evidence the trial court considered in a proceeding before the bench is insufficient to support the trial court's finding that terminating their parental rights to John is in

---

[1]To protect the privacy of the parties involved in the appeal, we identify the parents and the child by using pseudonyms. *See* Tex. R. App. P. 9.8 (Protection of Minor's Identity in Parental-Rights Termination Cases).

1

John's best interest.[2] We conclude the evidence admitted in the trial provides sufficient support for the trial court's best-interest findings that Mother and Father have challenged on appeal. We will affirm.

Background

The parties tried the case to the bench in several hearings that occurred in December 2019, and in January, February, May, June, and July 2020. John was less than two years old when the trial ended. Eight witnesses, including Mother and Father, testified in the hearings that comprise the trial. At the end of the last day of the trial, the trial court advised the parties that it would sign an order terminating Mother's and Father's parental rights. The court also explained the reasons it was doing so. In July 2020, the trial court signed the order at issue in this appeal in which it terminated Mother's and Father's parental rights to John. In the order, the trial court found the Department proved, by clear and convincing evidence, that Mother and Father had each knowingly endangered John by placing him with persons who engaged in conduct that endangered him and that both parents had failed to comply with their respective family service plans.[3] As to Mother, the trial court also found

---

[2]*See* Tex. Fam. Code Ann. § 161.001(b) (authorizing courts to terminate the parent-child relationship when the court's finding supporting its ruling terminating the relationship is coupled with a second finding that requires the trial court to also find that terminating the relationship would be in the child's best interest).

[3]*See id.* § 161.001(b)(1)(D), (E), (O).

that Mother's parental rights to John should be terminated for an additional reason—because she had used a controlled substance that endangered John and after having done so, failed to complete a court-ordered substance abuse program.

In August, Mother and Father, by motion, requested that the trial court provide them with written findings to support its rulings. The trial court did so, providing the parties with forty-five separate findings of fact. Of these, Mother and Father challenge only the trial court's finding that terminating their respective parental rights is in John's best interest. The other forty-four findings the trial court made are not challenged in the briefs that Mother and Father filed in support of their appeals. That said, however, many of the findings that Mother and Father have not challenged bear on the Court's review of the trial court's best-interest finding that Mother and Father have challenged in their appeals. While we choose not to list each of the trial court's findings, those particularly relevant to our analysis of the trial court's finding terminating Mother's and Father's parental rights are summarized below:

- Mother and Father signed family service plans. The respective plans which required them to complete various classes and tasks designed to resolve the concerns the Department raised in the proceedings that resulted in John's removal from Mother's and Father's care.
- In November 2019, the trial court ordered Mother to provide a biological specimen for testing. When tested, the test result on the specimen was positive for methamphetamines. After the court was advised of the test result, it ordered both parents to submit hairs for testing to reveal whether the parents continued to use illegal drugs.

3

- Mother's hair follicle test was positive for amphetamines, ecstasy, and oxycodone. Unlike Mother's test, Father's hair follicle test was negative.
- In February 2020, the trial court established a plan that contained steps designed to allow Father to ultimately achieve a right to a program involving a monitored return that would have returned to him some of his authority to parent John.
- In April 2020, the Department moved to modify the trial court's temporary orders, alleging that Father had not complied with the requirements in the court's order that contained the steps he needed to follow to be allowed to trigger John's monitored return.
- In May 2020, the Department informed the trial court that its goal had changed in the case from reuniting the family to terminating Mother's and Father's rights to allow John to be freed for adoption by a relative. That same month, the trial court found that "Mother was not compliant with her service plan and had not maintained contact with anyone in this case."
- In May 2020, Father took an additional drug test. The test results were positive for marijuana and cocaine.
- In June 2020, Father took another drug test. It was positive for marijuana.
- In June 2020, the trial court conducted another hearing. In the hearing, the court found that Father was only partially compliant with the requirements of his family service plan. The court found that Mother had not complied with the requirements of her plan. During the hearing, the trial court noted Mother's testimony in the hearing indicating that she had not bonded with John.
- At the conclusion of the hearings that comprised the trial, the trial court found the Department had shown, by clear and convincing evidence, that (1) Mother had knowingly placed or knowingly allowed John to remain in conditions or surroundings that endangered his physical or emotional well-being, (2) engaged in conduct or knowingly placed John with persons who engaged in conduct that endangered his physical or emotional well-being, (3) failed to comply with the provisions of her court-ordered family service plan, and (4) used a controlled substance in a manner that endangered John after failing to complete a court-ordered substance abuse program.
- Turning to Father, the trial court found at the conclusion of the trial that the evidence established that (1) Father had knowingly allowed John to remain in conditions or surroundings that endangered his physical or emotional well-being, (2) engaged in conduct or knowingly placed John

4

with persons who engaged in conduct that endangered his physical or emotional well-being, and (3) failed to comply with the provisions of a court-ordered family service plan.

- The trial court coupled its findings on the grounds for termination with best-interest findings, finding that terminating Mother's and Father's respective parental rights to be in John's best interest.

## Standard of Review

A trial court may terminate a parent-child relationship if the trial court finds, by clear and convincing evidence, that a parent engaged in conduct that violated one of the statutory grounds required to support a ruling terminating the parent's rights and finds that terminating the relationship is in the child's best interest.[4] When the Department asks trial courts to terminate a parent's rights to continue parenting a child, the Department has the burden of proof, and under that burden requires the Department must prove the elements of its claim based on standard of proof that requires clear and convincing evidence.[5] The Family Code defines "clear and convincing evidence" as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[6]

---

[4]*Id.* § 161.001(b); *see In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012) (explaining that the Due Process Clause and Texas Family Code mandate a "heightened" standard of review that applies to parental-rights termination cases).

[5]*In re E.N.C.*, 384 S.W.3d at 803.

[6]Tex. Fam. Code Ann. § 101.007; *In re E.N.C.*, 384 S.W.3d at 802.

In their respective briefs, Mother and Father raise just one issue for our review. Both argue that the evidence is legally and factually insufficient to support the trial court's best-interest finding. To be sure, neither parent has challenged the trial court's endangerment findings even though the trial court found that each parent engaged in conduct that endangered John. In a family law case, the Department must prove a termination ground under the Family Code exists and prove that terminating the parent's relationship with the child is in the child's *best interest* to obtain a ruling in favor of its claim seeking to terminate the parent-child relationship that exists between a parent and his or her child.[7]

As used in the Family Code, the term *best interest* is a term of art and encompasses a broad facts-and-circumstances evaluation, which allows the factfinder to exercise significant discretion in deciding if terminating the parent's rights is justified under the facts proven at trial.[8] In a challenge that asserts the evidence is legally insufficient to support the verdict, we review all the evidence in the light that favors the finding the appellant is challenging in the appeal to determine whether a reasonable trier of fact could have formed a firm belief or conviction that

---

[7]Tex. Fam. Code Ann. § 161.001(b)(2).
[8]*See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

the finding the parent has challenged is true.[9] We allow the trial court an appropriate degree of deference when it acts as the factfinder in a trial seeking the termination of a parent's parental rights, which means that we assume the factfinder resolved the disputed facts that arose in the trial in a manner that favors its judgment.[10] In our review, we disregard evidence that a reasonable factfinder could have disbelieved or found to have been incredible, but in doing so, we do not disregard the evidence that a reasonable factfinder could not have found incredible or disbelieved in our analysis of whether there is sufficient evidence to support the ruling that is being challenged in the appeal.[11] Thus, "[i]n cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true."[12] Thus, if the record reveals no reasonable factfinder could have formed a firm belief or conviction from the evidence admitted in the trial that the finding the appellant has challenged is true, we will find the evidence is legally insufficient to support the finding the appellant is challenging in the appeal.[13] In this case, the

---

[9]*In re E.N.C.*, 384 S.W.3d at 802 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)); *see In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014).

[10]*In re E.N.C.*, 384 S.W.3d at 802.

[11]*Id.*

[12]*In re K.M.L.*, 443 S.W.3d at 113.

[13]*In re E.N.C.*, 384 S.W.3d at 802.

parents chose to limit the factfinding they are challenging to the trial court's best-interest finding.

Mother and Father also assert the evidence is factually insufficient to support the best-interest finding they challenge in their appeals. In a factual sufficiency review, we review all the evidence admitted in the trial, including the evidence that is in dispute or that conflicts with the factfinder's verdict.[14] The question in a factual sufficiency review is whether the evidence admitted in the trial is sufficient to allow the factfinder, acting reasonably, to form a firm belief or conviction that the allegation that has been challenged on appeal is true.[15] "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient."[16]

While Mother and Father did not challenge the trial court's endangerment findings, the evidence of endangerment no doubt impacted the trial court's view on whether terminating Mother's and Father's rights is in John's best interest. Under the Family Code, *endanger* includes "more than a threat of metaphysical injury or

---

[14]*In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).
[15]*In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).
[16]*In re J.O.A.*, 283 S.W.3d at 345 (quoting *In re J.F.C.*, 96 S.W.3d at 266).

potential ill effects of a less-than-ideal family environment."[17] And the "endangering conduct need not be directed at the child."[18] When the evidence reveals that a parent is using illegal substances and also shows the parent's use of the substance has affected the parent's abilities to properly parent children, the factfinder may, in its discretion, infer that the parent's use of drugs is conduct that has endangered the child.[19]

On appeal, Mother and Father rely heavily on a presumption under the Family Code that "the appointment of the parents of a child as joint managing conservators" is in the child's best interest.[20] While it's true that such a presumption exists and we have applied it in resolving Mother's and Father's appeal, the presumption is also rebuttable.[21] For instance, another presumption in the Family Code that applies in such cases is that a prompt and permanent placement of the child in a safe home is in the child's best interest.[22]

---

[17]*In re E.N.C.*, 384 S.W.3d at 803.

[18]*Id.*

[19]*See In re J.O.A.*, 283 S.W.3d at 345; *In re A.J.H.*, 205 S.W.3d 79, 81 (Tex. App.—Fort Worth 2006, no pet.); *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

[20]Tex. Fam. Code Ann. § 153.131(b); *see also In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (noting that a "strong presumption" exists favoring keeping a child with its parents).

[21]Tex. Fam. Code Ann. § 263.307(a).

[22]*Id.*

In analyzing whether the evidence supports the trial court's finding that terminating Mother's and Father's parental rights is in John's best interest, we consider the nine factors outlined in *Holley v. Adams*.[23] While the *Holley* factors guide our review, the factors identified in *Holley* are not exclusive.[24] In reviewing the evidence relevant to the trial court's best-interest finding, we focus on whether the evidence allowed the trial court to reasonably infer that terminating the parents' respective relationships with John is in John's best interest.[25] In other words, our review does not focus on what might have served the interests of the child's parents.[26] Finally, we note that the evidence admitted in the trial need not necessarily

---

[23]In *Holley*, the Texas Supreme Court applied these factors when reviewing a best-interest finding:

- the child's desires;
- the child's emotional and physical needs, now and in the future;
- the emotional and physical danger to the child, now and in the future;
- the parenting abilities of the parties seeking custody;
- the programs available to assist the parties seeking custody;
- the plans for the child by the parties seeking custody;
- the stability of the home or the proposed placement;
- the parent's acts or omissions that reveal the existing parent-child relationship is improper; and
- any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d at 371-72.

[24]*In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

[25]*Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

[26]*Id.*

10

address all nine of the *Holley* factors, particularly when, as here, "the evidence [is] undisputed that the parental relationship endangered the safety of the child."[27]

Analysis

The evidence admitted during trial shows that the Department took custody of John and that he has been in the Department's custody for most of his life. The trial court authorized the Department to remove John from Mother and Father shortly after he was born. After the Department took John into its custody, Mother and Father spent little time with him. The evidence shows they didn't spend much time with him either because they continued using illegal drugs or because they were not fully compliant with the requirements in their respective family service plans. Each of the plans required Mother and Father to stay drug free before they could see John.

John was not quite two years old when the case went to trial. Given John's age, he did not testify in the trial. Yet the record still contains evidence that allowed the trial court to conclude John had not bonded with Mother or Father. Other evidence in the trial shows he has formed a strong bond with his foster parents, a married couple and also John's relatives. John's foster parents testified about the bond John has with them. John's court appointed special advocate, his CASA, also addressed his current placement, explaining that John is doing "very well" in foster

---

[27]*In re C.H.*, 89 S.W.3d at 27.

care. The CASA testified that John's foster parents are meeting his needs. Other evidence in the trial shows that John has been placed in a safe, stable, and drug-free home. This evidence supports the trial court's conclusion that by terminating Mother's and Father's rights, John would be freed and made available for adoption that would further his interest in being promptly placed in a permanent, safe, stable, and drug-free home.[28]

The evidence admitted in the trial about Mother's and Father's drug use reveals how their use of drugs has affected their ability to provide John a safe home. For instance, the evidence shows that Mother used marijuana throughout her pregnancy, even though Father testified that he asked her to stop. Other testimony shows that Mother and Father continued using illegal substances after John was born, even though they both were aware they needed to stop using such drugs so that the trial court would decide to return John to their care. The trial court heard testimony showing that both parents failed to fully comply with the requirements in their respective family service plans. For example, Mother failed to complete a substance treatment plan as ordered by the court. While Father did complete a substance abuse treatment plan, the testimony in the trial showed that he tested

---

[28]*See In re L.G.R.,* 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

positive for cocaine and marijuana after completing his plan. Mother and Father acknowledged in the trial that they have not yet established a strong bond with John. One witness even testified that in his opinion, Father is an ongoing danger to John because Father can be violent and "does not care for the safety of the child."

In the appeal, Mother and Father argue that, if given another chance, they can demonstrate they can give John a safe and stable home. In support of these arguments, Mother and Father point to their testimony showing that they started living with each other shortly before the trial began. Both point to testimony showing that Father now has an apartment, which the evidence shows would be suitable for raising a child. But even if the apartment itself is safe, the question is whether the evidence shows John's best interest is served by terminating his relationship with his parents given that they have shown they are capable based on their past conduct of endangering him. As to that question, the testimony in the record allowed the trial court, as a reasonable factfinder, to infer that Mother and Father would continue to use drugs should John be returned to their care. The testimony regarding their historical use of illegal drugs also allowed the trial court to infer, as a reasonable factfinder, that terminating their rights serves John's best interest by allowing the court to promptly place him in a safer, stable, and drug-free home than the one his parents claimed they would give him if given another chance. While it's true that

13

some of the evidence in the record shows that another factfinder might have reached a different conclusion, the evidence Mother and Father point to is not so strong that it demonstrates that a reasonable factfinder could not have found that terminating their rights to John is in his best interest.[29] While a parent's right to raise his or her child has a constitutional dimension, a parent's right to maintain that right is not absolute.[30]

Boiling it down, given a record containing evidence demonstrating Mother's and Father's past involvement with illegal drugs, showing they continued to use illegal drugs after John was removed from their home, indicating that the parents failed to fully comply with the requirements of their respective family service plans, and establishing that John has formed a strong bond with his foster parents and not with them, we hold the evidence is legally and factually sufficient to support the trial court's finding that terminating their parental rights is in John's best interest.[31]

---

[29]*See* Tex. Fam. Code Ann. § 263.307(a) ("In considering the factors established by this section, the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest.").

[30]*In re C.H.*, 89 S.W.3d at 26 ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

[31]*See In re C.H.*, 89 S.W.3d at 28 (holding the same evidence relevant to reasons the factfinder relied on to find one or more statutory grounds were proven may also be relevant to the factfinder's other required findings required by statute, that terminating the relationship is in the child's best interest); *In re M.R.J.M.*, 280

Conclusion

We conclude Mother's and Father's issues challenging the trial court's best-interest finding lacks merit. Accordingly, we affirm the trial court's judgment terminating Mother's and Father's parental rights to John.

AFFIRMED.

                                                    _____
                                                    HOLLIS HORTON
                                                    Justice

Submitted on January 4, 2021
Opinion Delivered February 4, 2021

Before Kreger, Horton and Johnson, JJ.

---

S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) ("Conduct that subjects a child to a life of uncertainty and instability also endangers the child's physical and emotional well-being.").